IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

REBECCA B.,[1]

    Plaintiff,

v.                                                       Civ. No. 24-386 WJ/SCY

MICHELLE KING,
Acting Commissioner of
Social Security,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Plaintiff argues that the Commissioner committed error when denying her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Specifically, Plaintiff asserts that the Administrative Law Judge ("ALJ") committed error when he failed to consider and discuss all of her medically determinable impairments at each step of the disability analysis. Binding Tenth Circuit precedent holds that such failure constitutes error. The error is not harmless because a reasonable factfinder, if considering these medically determinable impairments at every step of the disability process, could have found functional limitations resulting in a more restrictive work capacity. Therefore, I recommend the Court GRANT Plaintiff's motion and remand for further proceedings.[2]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] The Honorable William P. Johnson referred this matter to me for proposed findings and a recommended disposition under 28 U.S.C. § 636(b). Doc. 21. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). I reserve

**APPLICABLE LAW**

    A.    Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

    (1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

    (2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

    (3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

    (4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past

---

discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

>   relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B. Standard of Review

The court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at

3

800-01. In making these determinations, the court neither reweighs the evidence nor substitutes its judgment for that of the agency. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

4

## ANALYSIS

Plaintiff argues that the ALJ violated his duty to consider all impairments, both severe and non-severe, at every step of the disability process rather than only at an initial step in the process. Doc. 10 at 4-7. Here, at step two, the ALJ found severe impairments of degenerative disc disease, degenerative joint disease, and obesity. AR 17. The ALJ found that Plaintiff's medically determinable impairments of traumatic brain injury ("TBI") with associated vertigo and vision problems, bipolar disorder, and post-traumatic stress disorder were non-severe. AR 18-19. After finding that these impairments were not severe, the ALJ did not again discuss them or any of the supporting evidence when formulating the RFC at step four. *Cf.* AR 20-22. The ALJ assigned an RFC for the full range of sedentary work. AR 20. Plaintiff contends that the ALJ erred in failing to consider Plaintiff's non-severe impairments at step four. Doc. 10 at 6.

The statute, case law, and regulations require the ALJ to evaluate all of the medically determinable impairments, severe and non-severe, at every step of the disability evaluation. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1445(e); *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) ("[A]n ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination . . . . [T]he failure to consider all of the impairments is reversible error."); *Spicer v. Barnhart*, 64 F. App'x 173, 177 (10th Cir. 2003)[4] ("While . . . the mere diagnosis of an impairment does not necessarily compel a finding of disability, the regulations do require the ALJ to at least consider a demonstrated impairment throughout the disability determination process."). Thus, even if an impairment is non-severe at step two, the ALJ must "consider and discuss" it "as part of his residual functional capacity (RFC) analysis at

---

[4] This opinion cites unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

step four." *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).[5] In *Wells*, "the ALJ found that Ms. Wells's alleged mental impairments were medically determinable but non-severe." *Id.* at 1065. "He then used language suggesting he had excluded them from consideration as part of his RFC assessment, based on his determination of non-severity." *Id.* That language was: "These findings do not result in further limitations in work-related functions in the [RFC] assessment below." *Id.* at 1069. This was error; "a finding of non-severity alone would not support a decision to prepare an RFC assessment omitting any mental restriction." *Id.* at 1065, 1069. Plaintiff argues that *Wells* applies and governs this case. Doc. 10 at 5. I agree that *Wells* and the social security regulations *Wells* recognized mandate a finding of error in the instant case.

My *Wells* analysis begins at step two, where the ALJ evaluated Plaintiff's impairments as follows:

> Regarding the claimant's traumatic brain injury (TBI) with associated vertigo and vision problems, the claimant was hospitalized for one day in April 2020 due to headaches and ataxia. Imaging of the brain, head, and neck was normal. She was treated with topiramate and sent home. (Ex. 1F/9, 13, 15, 47-54.) Outside of that hospital visit, she denied dizziness and headache (her ongoing gait issues are dealt with below as a consequence of her musculoskeletal impairments). (Ex. 2F/8.) Her nystagmus in particular was noted to be a longstanding condition that required no treatment but only monitoring. (Ex. 2F/10.) She has other vision problems— cataracts and myopia—but the cataracts similarly required no treatment, only monitoring, and she was given a new glasses prescription for the myopia. (Ex. 2F/10.) The claimant's TBI, vertigo, and vision impairments are all nonsevere.
>
> . . . .
>
> The claimant's medically determinable mental impairments of bipolar disorder and posttraumatic stress disorder (PTSD), considered singly and in combination,

---

[5] The regulations state: "We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity." 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

> did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore nonsevere.

AR 18. Despite finding that Plaintiff has these medically determinable impairments, the ALJ did not "consider and discuss them as part of his residual functional capacity (RFC) analysis at step four," *Wells*, 727 F.3d at 1064, as he must under the regulations and under *Wells*.

Granted, the ALJ here, unlike the ALJ in *Wells*, did not use language suggesting he had excluded non-severe impairments from consideration as part of his RFC assessment. *Cf.* 727 F.3d at 1069 (the ALJ in *Wells* wrote at steps two and three: "These findings do not result in further limitations in work-related functions in the [RFC] assessment below."). To the contrary, the ALJ here represented that he did consider Plaintiff's non-severe impairments at step four. He wrote:

> The undersigned has reviewed and considered all severe and non-severe impairments in formulating the residual functional capacity below, and, where appropriate, has included limitations to address the claimant's non-severe impairments (SSR 96-8p).

AR 19. This sentence communicates that the ALJ did not find any work-related limitations "appropriate" in his consideration of Plaintiff's non-severe impairments. This sentence does not, however, constitute a discussion of Plaintiff's non-severe impairments at step four. That is, the ALJ does not explain why Plaintiff's non-severe impairments have no impact on the RFC the ALJ assessed. *Cf. Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (the agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed" (internal quotation marks omitted)).

And, as *Wells* observed, unless an ALJ finds "at step two that a medically determinable impairment posed *no* restriction on the claimant's work activities," 727 F.3d at 1065 n.3, social security regulations require an ALJ to consider *and discuss* at step four whether a claimant's non-severe impairments limit a claimant's ability to work. *Id.* at 1064. Here, at step two, rather

than finding Plaintiff's non-severe impairments posed no restriction on her work activities, the ALJ found these non-severe impairments "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." AR 18. Having concluded that Plaintiff's non-severe impairments might cause some limitation on Plaintiff's ability to perform basic mental work activities, the ALJ was required to discuss how the RFC addressed the impairments, even though the impairments caused limitations that were no more than minimal.

In her response brief, the Commissioner does not address *Wells* and the requirement that, at step four, an ALJ must discuss non-severe impairments even when those impairments result only in "mild" limitations. Instead, she argues that a finding of limitations at step two does not "mandate" the inclusion of any limitations in the RFC. Doc. 13 at 5 (noting "the Tenth Circuit has held that courts should take a fact-specific approach to determine whether substantial evidence in the record supported the ALJ's finding that, notwithstanding [step two] limitations, the claimant had no work-related" restrictions). It may be true that the non-severe impairments the ALJ found at step two do not per se mandate a particular RFC. This observation, however, fails to address Plaintiff's argument for remand.

Plaintiff's argument is that the ALJ must consider and discuss all medically determinable impairments at every step of the disability determination process. The Commissioner's response focuses on whether findings made at steps two and three must "carry over" to findings incorporated into the RFC at step four. For example, the Commissioner cites *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013). Doc. 13 at 5. In *Beasley*, "the ALJ found [the claimant] had moderate limitations in social functioning in the 'paragraph B' criteria when determining whether she met a listing at step three." 520 F. App'x at 754. Yet "in her RFC, the ALJ concluded by stating that Ms. Beasley 'can understand, remember, and carry out simple, routine,

and repetitive tasks' and 'can respond appropriately to supervision, co-workers, the general public, and usual work situations.'" *Id.* The claimant argued that these two findings did not match: the moderate limitations in steps two and three should have led to limitations related to social functioning in the RFC. The Tenth Circuit rejected this argument, finding that "[t]he ALJ was under no obligation to include limitations in social functioning in Ms. Beasley's RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis." *Id.* I have reached similar conclusions, explaining that step-two-and-three findings are not "evidence" the ALJ is required to consider and incorporate at step four. *See Asher M. v. Kijakazi*, No. 21cv156 SCY, 2022 WL 2952884, at *3 (D.N.M. July 26, 2022) (collecting cases).

If Plaintiff's argument was that the "mild" limitations the ALJ assessed[6] had to be mechanically incorporated into the RFC, the Commissioner's argument might prevail. But the Commissioner's argument does not address the argument Plaintiff makes: the medically determinable impairments themselves, which formed the basis of the ALJ's findings in steps two and three, had to be considered and discussed at step four. In short, the Commissioner responds to an argument Plaintiff did not make.

Even so, that the Commissioner failed to address Plaintiff's argument does not render irrelevant the Commissioner's assertions that consideration of Plaintiff's non-severe impairments would have no impact on the RFC the ALJ assessed for Plaintiff. Doc. 13 at 6 ("[T]he limited evidence from the relevant period . . . showed that while Plaintiff had longstanding mental impairments, they were well controlled with treatment, did not cause her any work-related

---

[6] At steps two and three, the ALJ found mild limitations in the "paragraph B" criteria of understanding, remembering or applying information; and concentrating, persisting or maintaining pace. AR 18-19.

functional problems, and, thus, did not warrant any mental RFC restrictions."). This is because the argument the Commissioner does make relates to the question of harmless error.[7]

In deciding whether to conduct a harmless error analysis, I turn to one of the cases the Commissioner cites in a string citation. *Id.* at 6-7 (citing, among other cases, *Alvey v. Colvin*, 536 F. App'x 792, 795 (10th Cir. 2013) (unpublished)). In *Alvey*, the panel found that the ALJ had committed error because, at step four, the ALJ did not engage in any analysis of the non-severe impairments the ALJ had recognized at step two. 536 F. App'x at 794. Thus, the Tenth Circuit concluded, "It appears . . . the ALJ failed to employ the step-four analytical procedure prescribed by the regulations." *Id.* The error the ALJ committed in *Alvey*, then, is similar to the error the ALJ committed in the instant case. Having found the ALJ in the instant case committed an error similar to the ALJ in *Alvey*, I look to *Alvey* for guidance as to the next step in my analysis.

In *Alvey*, after finding error, the Tenth Circuit went on to consider whether the ALJ's error in not considering or discussing the claimant's non-severe limitations at step four was harmless. *Id.* at 794 ("We may employ a harmless-error analysis sua sponte on appeal when, as here, the record is not overly long or complex, harmlessness is not fairly debatable, and reversal would result in futile and costly proceedings."). Under such an analysis, "harmless error may be appropriate where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* (internal citation and quotation omitted).

Applying such a harmless error analysis, the Tenth Circuit concluded, "Because the evidence in this case does not support assessing any functional limitations from mental

---

[7] Although the Commissioner does not use the term "harmless error" in her brief, the arguments the Commissioner makes in her brief bear on the question of harmless error.

impairments, we believe it appropriate to assess harmless error and avoid a futile remand." *Id.* at 794 (citation omitted). The court found no evidence that the claimant had functional limitations because (1) "there are no records indicating treatment by a mental practitioner," *id.*; (2) the existing records "contain few mentions of mental issues," *id.* at 794-95; and (3) the medical opinions "do not support any mental functional limitations," *id.* at 794-95. In the instant case, although the Commissioner does not explicitly request a harmless error analysis, her arguments effectively assert harmless error. Therefore, like the Tenth Circuit in *Alvey*, I will consider whether the ALJ's error meets the harmless error standard on the grounds that the record evidence does not support any functional limitations.

I agree with the Commissioner that the ALJ's failure to discuss some of Plaintiff's mild impairments at step four, such as the ALJ's failure to discuss claimant's easily-corrected-with-glasses myopia, was harmless. In contrast, the ALJ's failure to consider evidence of Plaintiff's TBI, and the blurry vision and vertigo related to this TBI, fails to meet the harmless error standard.[8]

Unlike *Alvey* where there were "no records indicating treatment by a mental practitioner," Plaintiff here cites to treatment and diagnosis records, as well as evidence of functional limitations related to her impairment. More specifically, on March 5, 2021, Plaintiff visited her eye doctor for evaluation of constant blurry vision in both eyes which had started about six years prior to that visit. AR 577. Plaintiff also had vertical nystagmus and myopia. *Id*. The doctor diagnosed bilateral cataracts and a history of TBI which was a "longstanding condition." AR

---

[8] Because the ALJ's failure to discuss Plaintiff's TBI necessitates remand, I do not consider whether the ALJ's failure to discuss other non-severe impairments would necessitate remand.

580. The doctor recommended further testing and continued follow-up to monitor for deterioration. *Id.* Plaintiff's visual acuity was rated at 20/200 in both eyes. AR 578.[9]

In terms of subjective symptom reports, Plaintiff wrote that: "I suffer from a TBI from 2013, and I have severe vertigo, bad eyesight, and chronic back pain." AR 235. She stated that vertigo affected her ability to dress, bathe, care for her hair, and do house and yard work. AR 236-37. She reported she needed bars to hold in the shower and at the toilet. AR 201, 236. She stated she cannot drive at night because her "vertigo is too severe and it's affecting my eyesight now." AR 205, 238. "Vertigo causes me to lo[]se my balance when standing. Eyesight is worsening from TBI." AR 240. Plaintiff reported that "[b]ecause of my vision, I can't see my hair in detail." AR 201. Additionally, Plaintiff's mother wrote, "brain damage causing problems with nystagmus [and the] communication between [her] eyes and brain… her vision is always moving, a tangled mess." AR 243.

Regarding this evidence, the Commissioner first argues Plaintiff fails to show that "these non-severe visual impairments caused her any work-related functional limitations prior to her date last insured." Doc. 13 at 9. I disagree that this evidence is categorically irrelevant on the basis that it is after the date last insured (December 31, 2020). *See Baca v. Dep't of Health & Hum. Servs.*, 5 F.3d 476, 479 (10th Cir. 1993) ("[E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be

---

[9] The ALJ's step-two discussion of this record failed to acknowledge the assessment of TBI in the context of vision problems and the doctor's recommendation of follow-up tests. Instead, the ALJ asserted the doctor concluded that "no treatment" was required besides an eyeglasses prescription for myopia. AR 18.

presumed to have been present and to have imposed limitations as of the earning requirement date." (quotation omitted)). Similarly to the Commissioner on appeal, the ALJ stated he did not consider the statement about Plaintiff's ability to drive because it was made after her date last insured and included the word "now" in the statement. AR 18. Plaintiff's statement that she cannot drive *because of blurry vision*, however, is simply an example of present consequences for her blurry vision that she asserts began during the relevant period. For example, the March 2021 record reflects that Plaintiff experienced blurry vision for six years prior to March 2021, and that her TBI is a "longstanding" condition. AR 580.

Further, at the hearing, Plaintiff testified that she experienced vertigo when she was on her feet eight hours a day for a job prior to 2020. AR 35-36. And, Plaintiff wrote in one of her function reports that she has suffered from her TBI since 2013. AR 235. The reports of vision problems and problems such as vertigo that are associated with TBI, therefore, constitute pertinent evidence. These reports may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date. *See Baca*, 5 F.3d at 479. Consequently, they cannot be written off merely because the reports were made after the date last insured.

Next, I cannot confidently say that no reasonable administrative factfinder, following the correct analysis, could have added limitations to Plaintiff's RFC based on conditions such as Plaintiff's blurry vision and vertigo that are the product of her TBI. The RFC stated that Plaintiff could perform any work in the sedentary occupational base. AR 20. And the Social Security Administration recognizes that visual limitations will erode the sedentary occupational base:

> Visual limitations or restrictions: Most sedentary unskilled occupations require working with small objects. If a visual limitation prevents an individual from

> seeing the small objects involved in most sedentary unskilled work, or if an individual is not able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles, there will be a significant erosion of the sedentary occupational base. These cases may require the use of vocational resources.

SSR 96-9P, 1996 WL 374185, at *8 (July 2, 1996).

Considering evidence of Plaintiff's blurry vision and social security guidance related to visual limitations, I conclude that a reasonable administrative factfinder could credit Plaintiff's reports that blurry vision and vertigo affect her eyesight and her ability to, for example, see her hair. A reasonable factfinder could find that this would also affect her ability to perform work-related functions. As SSR 96-9P recognizes, *any* limitation on the ability to see incorporated into the RFC would result in erosion of the sedentary occupational base, which would in turn require the ALJ and a VE to evaluate her work-related functioning individually rather than by applying the grids. *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

Nonetheless, the Commissioner argues that other evidence outweighs the single doctor's visit and Plaintiff's reports of vision problems:

> Notably, Plaintiff did not mention any vision problems as an issue preventing her from being able to work during the administrative hearing (Tr. 30-45). And Plaintiff continued to work as a medical technician until November 2020, which required sufficient vision to check on patients, complete files, and use a computer (Tr. 34-35). Additionally, Plaintiff stated in her June 2021 Function Report— submitted to the agency six months after her date last insured— that she was able to drive (Tr. 19, citing Tr. 203).

Doc. 13 at 9. Had the ALJ conducted such weighing, the results very well might have supported the RFC he assessed. The problem for the Commissioner, however, is that the ALJ did not cite any of this evidence or perform any such weighing. And, neither the Commissioner nor the Court may offer post-hoc justifications for the decision below. *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). The harmless-error review described in *Alvey* is limited to determining whether a reasonable factfinder could have found that substantial evidence supported Plaintiff's claimed

14

limitations. That is, the Commissioner's citation of conflicting evidence does not alter the conclusion that Plaintiff presented evidence a reasonable factfinder could accept as establishing functional limitations.

In sum, the ALJ's failure to discuss and consider Plaintiff's TBI symptoms (blurry vision and vertigo) when fashioning the RFC is not harmless. I recommend the Court remand for further proceedings.

## CONCLUSION

For the reasons stated above, I recommend Plaintiff's motion be granted and the case remanded for further proceedings.

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**